been taken in this court, and the case has been submitted without argument or objection on the part of the United States.

The grant under which the claim is made was issued by Governor Micheltorena on the 20th of January, 1844. The signatures to the original document, produced by the interested parties, are fully proved, and the expediente is found in the archives and duly certified by the surveyor general. That the grant was made does not seem to admit of any question, and though from an error in drawing the diseño the positions of the San Joaquin river on one side and the serranias on the other are incorrectly delineated, and should be reversed, yet the calls in the grant, the natural objects mentioned in the diseño, the specification of the lindero or boundary of Higuera's rancho as one of the boundaries of the tract now claimed, together with the deposition of Hernandez contained in the transcript, are abundantly sufficient to explain and correct the error.

With regard to the occupation and settlement of the land, it is shown that the conditions were in that respect complied with within the time limited. The fact that owing to the depositions of the Indians the grantees were driven from their property after the murder of Linsay, cannot of course prejudice their claim. The mesne conveyances are proved and appear to be regular, and there seems to be no reason for reversing the decree of the board. A decree of confirmation must therefore be entered.

## Case No. 16,142.

UNITED STATES v. REID.

[See Case No. 14,817.]

## Case No. 16,143.

UNITED STATES v. REID.

[The case reported under above title in Howison Cr. Tr. 89, is the same as Case No. 14,817.]

## Case No. 16,144.

UNITED STATES v. The REINDEER.

[2 Cliff. 57.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1861. [2]

CONFLICT OF JURISDICTION—VESSEL ATTACHED BY STATE PROCESS — FORFEITURE FOR PRIOR ACT OF OWNER — SLAVE-TRADE — ACT OF MARCH 22, 1794.

1. A vessel was seized under the act of March 22, 1794 [1 Stat. 347], as being fitted and prepared for the slave-trade. At the time of the service of the monition by the United States marshal she was in the possession of a state sheriff, by virtue of an attachment issued from a state court. Held, that this court still had jurisdiction, because forfeiture of a

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [Affirmed in 2 Wall. (69 U. S.) 383.]

vessel arises from the wrongful act of the owner, or some person in charge of the vessel, and wherever the forfeiture is made absolute by an act of congress. the forfeiture attaches at the time the wrongful act is committed, and consequently the owner is divested of his title eo instanter. and the same becomes vested in the United States.

2. The possession of a sheriff, under civil process, whether from state or federal court. will not defeat the operation of the revenue laws of the United States, or impair a forfeiture for engaging in the slave-trade, or for fitting a vessel for the same.

3. Under the first section of the act of March 22, 1794, a vessel is liable to be prosecuted and condemned for engaging in the slave-trade, in any of the circuit or district courts where the vessel may be found and seized. Therefore where a vessel had been fitted and prepared for a traffic of this kind in New York, it was held that she was properly condemned by the district court of Rhode Island, having been seized there.

[Appeal from the district court of the United States for the district of Rhode Island.]

This was a libel of information filed by the district attorney, in behalf of the United States, and claiming forfeiture of the vessel. It was founded on the first section of the act of March 22, 1794, the first section of the act of May, 1800 [2 Stat. 70], and the second section of the act of April 20, 1818 [3 Stat. 450]. The libel was filed in the court below, August 7, 1861, and the case came before this court on appeal from a decree condemning the vessel as forfeited to the United States. [Cases unreported.] It was alleged that the bark Reindeer, of the burden of two hundred and forty-eight tons, was, on the 26th of January, 1861, by a citizen or citizens of the United States, either as master, factor, or owner, fitted, equipped, and prepared, within the port of New York, for the purpose of carrying on the trade or traffic in slaves to some foreign country, contrary to the first-named act of congress. Other counts were contained in the libel which were drawn upon the other acts above named. According to the libel, the bark arrived at the port of New York on July 11, 1861, and it was alleged that she was seized by the collector of the port on the 1st of August following. Claim was filed by Gregorio Tejedor on August 19th, averring that he was the true and bona fide owner of the cargo, and the charterer of the vessel, and praying that he might be admitted to defend. He subsequently filed an answer, denying every statement of the libel. Certain other parties also appeared and made claim to the vessel, and were admitted to defend. They were David M. Coggeshall, sheriff of the county of Newport, and Henry P. Booth and James E. Ward, claiming the vessel as attaching creditors. Answer was also filed by them, denying all the material allegations of the libel, and also pleading to the jurisdiction of the court. In the ninth article of their answer they alleged that David M. Coggeshall, on July 1, 1861, and up to the time of the hearing, was sheriff of the coun-